GRAHAM ET AL., APPELLEES, *v.* PAVARINI, APPELLANT.

(No. 45146—Decided February 24, 1983.)

*Mr. Robert J. Suster* and *Mr. Robert A. Kosher,* for appellees Charles A. Graham et al.

*Mr. James D. Shelby,* for appellant Philip Pavarini.

MARKUS, J. This is defendant-tenant's third appeal from eviction orders in a case that has been pending almost five years. Four earlier eviction suits were dismissed by plaintiffs-landlords, by court order or by stipulation, in the apparent belief that tenant would meet the lease obligations. Tenant contends (1) the judgment was against the manifest weight of the evidence and contrary to law, and (2) the trial court erred by denying his pretrial motion for summary judgment. We find no prejudicial error, so we affirm.

The relevant facts are largely undisputed. On April 23, 1976, tenant obtained an assignment of the existing lease for landlords' gasoline station and related commercial property. According to the lease terms, tenant agreed to pay landlords their monthly rental ($1,065) on or before the first day of each month, and real estate taxes for the premises within

ten days after they became due. Tenant also agreed to pay for a substantial gasoline inventory on hand by June 15, 1976. During eight months of 1976 and all of 1977, tenant paid the specified monthly rental, but at least fifteen rental payments were tardy. In September 1977, landlords began filing eviction lawsuits because the rental payments were late. Additionally, landlords filed a separate action that month for the gasoline inventory debt which remained unpaid.

The parties reached an agreement to settle and dismiss those September cases in November. As part of that settlement agreement, tenant agreed to pay landlords a stipulated amount for the gasoline inventory, agreed to make specified monthly installment payments on that debt beginning December 1, agreed that those obligations would be treated as a condition of the lease, and agreed that any failure to make timely payments would constitute a breach of the lease agreement. Meanwhile, landlords filed their third eviction case in November, claiming additional breaches of the lease. They dismissed that case in December by stipulation when the parties reached another settlement.

On December 22, 1977, landlords sent tenant a notice by certified mail advising him about the amount of real estate taxes for 1976 and 1977, which tenant had failed to pay and for which landlords requested reimbursement within ten days. When tenant failed to pay the January rent on time, landlords sent tenant another notice on January 3, 1978, listing the overdue taxes plus the unpaid January rent and inventory installment. Tenant paid the January rent and the inventory installment later that month, without making any payment toward the tax debt.

In February, tenant's rent and related obligations were again overdue, and landlords filed their fourth eviction case. Sometime in January or February the parties agreed informally that tenant would make monthly payments on the overdue tax debt. When tenant made his tardy February rental payment, together with installments for the inventory and tax debt, the court dismissed landlords' fourth eviction case on landlords' motion.

Tenant paid his March rent with an inventory installment one week late, but without any payment for the tax debt. The leased building sustained storm damage in March, and the insurer providing coverage issued a draft for that loss, payable to landlords and a roof repair company. The parties disputed the disposition of that draft, so it was not negotiated until June 23, 1978, following a conference at municipal court.

When tenant made no payments on any of the lease obligations during the first half of April, landlords began this action. On April 16, 1978, they delivered a statutory three-day eviction notice to tenant pursuant to R.C. 1923.04. Eight days later on April 24, landlords filed the present case, their fifth forcible entry and detainer suit.[1] Their complaint also sought

---

[1] R.C. 1923.01, at the time relevant herein, provided:

"* * * [A]ny judge of a county court, within his proper area of jurisdiction, may inquire about persons who make unlawful and forcible entry into lands and tenements and detain them, as well as about persons who have a lawful and peaceable entry into lands and tenements and hold them unlawfully and by force. If upon such inquiry it is found that an unlawful and forcible entry has been made, and that the lands or tenements are held by force, or that after a lawful entry they are held unlawfully, then such judge shall cause the party complaining to have restitution thereof."

R.C. 1923.02 stated:

"Proceedings under Chapter 1923. of the Revised Code, may be had:

"* * *

"(I) Against tenants of premises who have breached an obligation imposed upon them by a written rental agreement;"

payment of April rent, past due taxes, the unpaid balance of the inventory settlement, and any further sums which would become due during the pendency of the action. Tenant asserted a counterclaim for interference with his subtenancy agreements and failure to make repairs.

The first trial of this case led to a judgment for plaintiffs-landlords and two appeals by tenant. This court dismissed tenant's first appeal on the ground that the trial court failed to enter a final appealable order. *Graham* v. *Pavarini* (Dec. 20, 1979), Cuyahoga App. No. 40739, unreported. When the judgment was completed, this court ordered a new trial on tenant's second appeal, because tenant had not received sufficient notice to participate in the first trial and had not been present at that trial. *Graham* v. *Pavarini* (Jan. 8, 1981), Cuyahoga App. No. 42080, unreported.

Following that remand, the case was transferred from the original municipal court to another municipal court at tenant's request, and then to the court of common pleas when tenant increased the amount claimed on his counterclaim. The court of common pleas conducted a non-jury trial on the eviction claim, deferring the other claims for trial at a later time. That second trial led to another order evicting tenant, and tenant brings this third appeal from that order.[2]

## I

Tenant's first assignment of error contends:

"The trial court erred in entering a judgment which granted the plaintiffs the right to possession of the leased premises, said judgment being against the manifest weight of the evidence and contrary to law."

Landlords sought to evict tenant for nonpayment of April rent, the April in-

ventory installment, and real estate taxes for 1976 and 1977. Tenant admitted that he had not paid any of those sums when this suit was filed. However, he asserted that the statutory notice to vacate, which is required before an eviction suit, had been waived by landlords' later acceptance of rental payments. He also denied that these various unpaid sums constituted defaults or a basis for eviction, because landlords allegedly failed to notify him of these debts as required by the lease. Finally, he argued that the debts for unpaid taxes and inventory obligations were extinguished by landlords' prior dismissals of suits asserting claims for those debts.

## A
### The Statutory Notice

Under R.C. 1923.04, at least three days' *notice to leave the premises* is required to maintain a forcible entry and detainer action:

"* * * [A] party desiring to commence an action under Chapter 1923 of the Revised Code, shall notify the adverse party to leave the premises, for the possession of which action is about to be brought, three or more days before beginning the action, by certified mail, return receipt requested, or by handing a written copy of the notice to the defendant in person, or by leaving it at his usual place of abode or at the premises from which the defendant is sought to be evicted."

Landlords produced a written notice to vacate which was delivered to tenant's premises on April 16, 1978. Tenant did not deny receiving that notice. This suit was filed on April 24, eight days after the statutory notice.

However, tenant argued that this notice was waived when landlords accepted payment for the April rent on June

---

[2] An eviction order in an action for forcible entry and detainer is appealable, even though related claims for money obligations remain

unresolved. *Housing Authority* v. *Jackson* (1981), 67 Ohio St. 2d 129 [21 O.O.3d 81].

23, 1978. At the direction of the municipal court judge, landlords then negotiated a check they had received in late March from an insurer paying for storm damage to the property. On June 23, landlords credited the amount of that check on their records as payment for tenant's unpaid April and May rents, although landlords contended that it actually reimbursed them for damage to the building roof.

Prior to that date, landlords wanted to use the check to pay for repairs by an independent repair company. Tenant had argued that he should receive the proceeds of the check or have it credited to his lease obligations since he had contributed part or all of the insurance premiums and was responsible for the building repairs.

Contrary to tenant's contention, landlords' acceptance of past due rent did not waive the statutory three-day notice to vacate the premises. We believe the applicable rule is properly stated in the recent decision by the Court of Appeals for Franklin County in *Presidential Park Apartments* v. *Colston* (1980), 17 O.O. 3d 220, at 221:

"After serving a notice to vacate, it is inconsistent for a landlord to accept and retain rent payments *in advance.* * * * Under these circumstances, the landlord must be deemed to have waived the notice to vacate as a matter of law.

"We recognize this decision may place a landlord in a difficult position considering the length of time sometimes required to prosecute a forcible entry and detainer action. A tenant in occupancy defending such an action is liable for rent during the pendency of the suit, and *the landlord may accept rent paid for liability already incurred without acting inconsistently with the notice to vacate. But by accepting future rent payments, the landlord has waived the three-day notice since such acceptance is inconsistent with the landlord's notice to vacate.* See *Pace* v. *Buck,* 86 Ohio App. 25, 40 O.O. 458 (1949), and *Schmidt* v. *Hummell,* 81 Ohio App.

167, 36 O.O. 485 (1947)." (Emphasis added.)

In this case there was no unqualified tender of April rent, nor was there any clear acceptance of April rent, until at least June 23. Prior to that time tenant sought to have an insurance check applied to rent rather than uncompleted repairs, and landlords refused to do so until a municipal court judge gave assurance or direction that tenant would accomplish those repairs. Consequently, there was no waiver of the statutory three-day notice by landlords' ultimate acceptance of that check as a credit for April and May rent.

Nor was there any waiver of the landlords' purpose to evict by their acceptance of later rental payments, all of which were received on or after the date they were due to satisfy tenant's rental liability.

The conclusion that acceptance of rental payments did not waive the statutory eviction notice is particularly appropriate in this case, since the parties expressly agreed that landlords retained their right to collect earned rentals without waiving their right to evict. The lease agreement provided:

"[A]fter the service of any notice or commencement of any suit, or final judgment therein, LESSOR may receive and collect any rent due, and such collection or receipt shall not operate as a waiver of nor affect such notice, suit or judgment.

"* * *

"* * * [Lessor can evict and re-enter for lessee's failure to satisfy lease obligations after specified notice] without prejudice, however, to the right of Lessor to recover from Lessee or his assigns all rent due up to the time of such entry."

B
Default as a Basis for Eviction

The lease involved here requires written *notice of unpaid lease obligations* as a condition for default and eviction:

"DEFAULT:  If the rent or any part thereof shall at any time be in arrears and

unpaid, and shall so remain for fifteen (15) days following written notice by Lessor to Lessee, or if Lessee shall fail to keep and perform any of the other covenants, agreements, or conditions of this Lease on his part to be performed within thirty (30) days following written notice of such default * * * Lessor may enter in and upon the demised premises and again have and repossess and enjoy the same as if this Lease had not been made, and thereupon this Lease, and everything herein contained on the part of Lessee to be kept and performed shall cease, terminate and be utterly void; without prejudice, however, to the right of Lessor to recover from Lessee or his assigns all rent due up to the time of such entry."

Landlords provided documentary evidence of multiple notices that tenant had unpaid obligations under the lease which were not satisfied within the allowable intervals.

Tenant's unpaid debt for real estate taxes in the sum of $2,512.12 was the subject of written notices on December 22, 1977, and January 3, 1978. Tenant admitted receipt of one of these notices; he was uncertain whether he received both of them. Landlords' eviction suit on February 23, 1978, again demanded payment for those same taxes. Although that suit was voluntarily dismissed without prejudice, it was certainly forceful notice of the unpaid tax debt.

Despite all those notices, tenant paid only $300 toward the tax debt at any time before or after this suit was filed. He argues that his single $300 payment in February satisfied his undertaking for that month, so landlords had to provide another written notice of the remaining balance. However, the lease permits eviction if tenant fails to perform his covenant to pay those taxes "within thirty (30) days following written notice of such default."

Tenant cannot be heard to complain that he had no such notice, simply because he made one partial payment. Any agreement by landlords to accept installment payments of the tax debt did not extinguish the underlying debt, so tenant's obligation to pay the balance continued when he failed to pay installments in March and April. Cf. *Dessette* v. *W.J. Cutler Co.* (1928), 29 Ohio App. 88.

Additionally, the statutory three-day notice and the complaint in this case expressly notified tenant that the taxes remained unpaid, if any notice after his February payment was needed. Those notices did not mature into grounds for eviction until thirty days after their delivery, but tenant made no payment in that interval, so his default was established long before the eviction judgment more than three years later. Similarly, the failure to pay April rent within fifteen days after delivery of the three-day notice or the complaint, and the failure to pay the April inventory installment within thirty days after those notices, both matured as grounds for eviction before the judgment.

## C

### The Effect of Prior Dismissals

Tenant contends that landlords forfeited their rights to the unpaid taxes and the total inventory obligation when they twice caused suits containing those claims to be dismissed. More specifically, tenant argues that dismissals of landlords' November and February suits constitute "an adjudication upon the merits" pursuant to Civ. R. 41(A)(1). That rule provides in part:

"* * * [A]n action may be dismissed by the plaintiff without order of court (a) by filing a notice of dismissal at any time before the commencement of trial unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by the defendant or (b) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an ad-

judication upon the merits when filed by a plaintiff who has once dismissed in any court, an action based on or including the same claim.''

If each of those prior actions contained claims which are the subject of the present action, termination of those actions by "notice of dismissal" would bar those claims as *res judicata*. However, a review of the record demonstrates that none of tenant's contentions about the prior dismissals has merit.

The November case made no claim for unpaid taxes, which is a separate obligation under the lease. Further, neither case was terminated by a "notice of dismissal" referrred to in Civ. R. 41(A)(1)(a). The November case was concluded by a stipulation of the parties approved by the court pursuant to Civ. R. 41(A)(1)(b) and 41(A)(2). The February case was terminated by an order of the court on motion by plaintiffs for a voluntary dismissal pursuant to Civ. R. 41(A)(2).

Each of those dismissals was expressly stated to be "without prejudice." Civ. R. 41(A)(1)(a) acts to make dismissals with prejudice despite contrary language in the notice, only when they are effected by a plaintiff's written notice without any participation or order of the opposing party or the court.

## D

### The Weight of the Evidence

Ordinarily, appellate courts will not disturb judgments supported by some competent, credible evidence relating to every necessary element of the case. *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]. When called upon to do so, appellate courts will consider whether such evidence is fundamentally incredible. See *State* v. *Gaston* (Jan. 11, 1979), Cuyahoga App. No. 37846, unreported, at pages 11-13.

In this case, tenant did not dispute landlords' claims that the lease obligations were not paid, and that a statutory three-day notice had been supplied. Tenant's arguments relate principally to legal issues concerning the significance of later rent payments, prior agreements to accept installment payments, and dismissals of prior related lawsuits. We have already rejected tenant's contentions on those matters.

To the extent that there were any factual disputes, we find that landlords' claims were supported by substantial, competent, credible evidence, most of which was buttressed by documentary exhibits. Therefore, tenant's first assignment of error is overruled.

## II

Tenant's second assignment of error asserts:

"The trial court erred in denying defendant's motion for summary judgment."

Civ. R. 56(C) directs that summary judgment is appropriate where:

"* * * [T]he pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

A ruling which denies a summary judgment motion is reviewable on an appeal by the movant from a subsequent adverse final judgment. *Balson* v. *Dodds* (1980), 62 Ohio St. 2d 287 [16 O.O.3d 329].

Tenant's argument on his summary judgment motion raised the same issues he urged at trial. More specifically, he contended that landlords waived their right to evict because they accepted the April rent. At the summary judgment hearing, tenant relied on the notation carried in landlords' records that the April rent had been paid, and landlords' deposition testimony acknowledging that the insurance check had been credited to tenant's April rent. For the reasons already

discussed, that evidence did not eliminate all genuine issues of material fact and thereby entitle tenant to judgment as a matter of law.

At the summary judgment hearing, tenant made no showing that rent for April or any later month was accepted before it was due, and consequently failed to show any waiver by landlords. Further, landlords presented an affidavit from the municipal court judge who was instrumental in the landlords' acceptance of that check. In that affidavit, the judge stated his understanding that the check was accepted as payment for roof damage rather than rent. Thus, there were unresolved issues of fact which prevented any judgment as a matter of law, so the trial court correctly denied the summary judgment motion.

Finally, the denial of summary judgment in the circumstances of this case was rendered moot or harmless, even if it had been error. The ultimate trial on precisely the same issues demonstrated that there were genuine issues of material fact and that the evidence supported a judgment for the party opposing summary judgment. CF. *Dupler* v. *Mansfield Journal* (1980), 64 Ohio St. 2d 116, at 127, fn. 11 [18 O.O.3d 354] (William B. Brown, J., concurring); 7 Moore's Federal Practice, Chapter 61.

Tenant's second assignment of error is overruled, and the trial court's eviction order is affirmed.

*Judgment affirmed.*

PATTON, C.J., and PARRINO, J., concur.