[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This case involves the appeal of Anna and Robert Dudley from a judgment of the Xenia Municipal Court ordering restitution of the Dudleys' apartment to their landlord. We stayed the writ of restitution on August 31, 1998, contingent upon the Dudleys' timely deposit of monthly rental payments as supersedeas bond with the Greene County Clerk of Courts.
According to the testimony presented at the trial, Julian Investments, Inc. (Julian) manages rental property located at 341 Stelton Road, which is also known as the Meadows. The complaint filed by Julian alleged that the Dudleys were tenants at the premises under a written rental agreement. In their answer, the Dudleys admitted that a written agreement existed, but denied the only term of the agreement set out in the complaint. The rental agreement itself was not attached to the complaint, nor was it identified or discussed during trial. The only testimony about the agreement at trial was that a lease agreement existed between Julian Investments, the Dudleys, and Greene Metropolitan Housing (Greene Met). What the precise terms of the agreement were is unclear.
What we do know from the testimony is that the Dudleys' rent was subsidized though Greene Met. Up until March, 1998, the Dudleys paid $13 per month and the remainder of the rent (approximately $463) was paid first by the U.S. Dept. of Housing and Urban Development (HUD), and then by Greene Met, following the transfer of a number of apartments from HUD to Greene Met. The ledger sheet for the Dudleys indicates that on various occasions before March, the Dudleys were late with their rent, which was due on the first of the month. A late payment fee of $20 was assessed in November, 1997. In December, payment was made on December 9, but no late fee was assessed. In January, a late fee was assessed on January 6, but neither the late fee nor the January rent was paid. Subsequently, in February, another late fee was added, and a payment of $33 was made on February 9, leaving a balance of $33. Another late fee of $20 was added on March 6, and the March rent payment of $13 was then made on March 9, 1998. Thus, at the end of March, a $53 balance appears to have been owed.
On March 18, 1998, Mrs. Dudley received a paper indicating that the Dudleys' share of the rent was being raised to $226 per month, due to income changes of Mr. Dudley. Mrs. Dudley assumed the change would be effective in April, and made a payment of $246 on April 6, 1998. This included the normal rent plus a late fee, since the rent was paid a day late. However, the ledger does not indicate that a late fee was added to the Dudleys' balance.
Julian began managing the apartments on March 19, 1998. Julian took the position that the Dudleys were liable for the increased rent in March, 1998, not in April. Julian maintained, at least according to the ledger and a three day notice served on the Dudleys on April 15, 1998, that the Dudleys owed $114. The Dudleys took the position that they were not liable for the increased amount in March. As a result, an eviction action was filed against the Dudleys and was heard on June 5, 1998, by an acting judge. The judge found that Julian had not established a nonpayment of rent and that the new amount of rent was effective in April, 1998.
In May, during the pendency of the first eviction action (and this is not disputed), Mrs. Dudley tried to tender full payment to Julian of the $226 rent payment for May, but Julian refused the payment. As we noted, the court hearing on the first eviction action was on June 5, 1998, and was resolved in the Dudleys' favor. A second eviction notice was then given to the Dudleys on June 10, 1998, based on non-payment of rent. This notice indicated that $433 was due at that time. No rent was paid between the time of the June 5, 1998 hearing and the June 10, 1998 eviction notice. According to Mrs. Dudley (and this is again undisputed), she did try to pay rent to Angela Shockley, the apartment manager, on June 12 or 13, 1998. This would have been after the second eviction notice was given. At that time, Mrs. Dudley offered to pay $326, but Shockley said the entire amount had to be paid. According to Mrs. Dudley, she was not able to make a full lump sum payment because her husband did not make that much money in one month. Additionally, the Dudleys tried to pay make partial rent payments in June and July to Devon Howell, who handled security for the apartment complex and was also authorized to accept rent from tenants. Howell was told to refuse the rent because of the pending eviction action. Subsequently, In July, Mrs. Dudley talked to both Howell and Julian's management about a payment agreement. Mrs. Dudley offered to pay $300 at that time and to pay an extra $100 per month until the arrearage was satisfied. However, this offer was also refused.
After hearing the above testimony, the trial court issued a writ of restitution. The court found that Julian rightfully refused payment while the eviction was pending. Further, the court found that the amount of rent was resolved at the June 5, 1998 hearing and that the Dudleys would have been aware at that time of the amount they had to pay. According to the court, Julian was not required to accept less than full payment. And finally, the court found that the Dudleys were given a reasonable period of time to catch up the rent in view of the five day interval (which included three business days) between the court hearing and the second eviction notice.
On appeal, the Dudleys raise the following assignments of error:
 I. The trial court committed prejudicial error by finding that the Appellant had a reasonable amount of time to pay the rent that had accrued during a prior eviction action or in the alternative not finding that the landlord was required to accept late payments or a payment plan.
 II. The trial court erred when it failed to find that no good cause existed to evict the Defendant/Appellant.
 III. The trial court erred when it failed to grant equitable relief to prevent a forfeiture of Appellant's leasehold interest.
 IV. The trial judge abused her discretion by favoring the Appellee to the prejudice of the Appellant.
After reviewing the record and the applicable law, we reject the assignments of error and affirm the judgment of the trial court. A brief discussion of our reasoning follows.
 I
In the first assignment of error, the Dudleys contend the trial court prejudicially erred in finding that the Dudleys had a reasonable amount of time to pay the rent which accrued during the eviction action. The Dudleys also feel the trial court erred in finding that the landlord was not required to accept late payments or a payment plan. To support these assertions, the Dudleys make several points. First, they maintain that five days was not a reasonable amount of time given their circumstances. Second, they claim that Julian waived its right to insist on punctual payment of rent by consistently accepting delinquent rent. Finally, they argue that payment plans typically were acceptable in the past and should have been allowed in this case. In response, Julian notes that the Dudleys had a week and a half after the June rent was due to pay the full amount of the May and June rent, and should have reserved the money that they knew was due. Additionally, Julian contends that it was not required to accept partial payment, and that, as a new owner of the premises, it had established no course of conduct or dealing with the Dudleys.
At the outset, we note that a number of the facts used to support the Dudleys' arguments are not of record. For example, when discussing the circumstances requiring a reasonable amount of time for the overdue rent to be paid, the Dudleys refer to the fact that Mrs. Dudley has a heart condition and is unable to work, and to the fact that Mr. Dudley did not receive a pay check during the five days between the first eviction hearing and the second eviction notice. We have disregarded these facts since they are not of record.
Both sides have cited Graham v. Pavarini (1983), 9 Ohio App.3d 89
for the proposition that a tenant in occupancy during an eviction action remains liable for rent during the pendency of the action. We agree with this statement. Based on Graham, the Dudleys were liable for any rent that accrued during the time they failed to vacate the premises. Graham further indicates that
 "the landlord may accept rent paid for liability already accrued without acting inconsistently with the notice to vacate. But by accepting future rent payments, the landlord has waived the three-day notice since such acceptance is inconsistent with the landlord's notice to vacate."
Id. at 92 (citation omitted).
Based on this authority, Julian could not have accepted the tender of rent in May without waiving the notice to vacate. Furthermore, any rent tendered after June 10, 1998, could also not have been accepted. However, based on the same authority, Julian could have accepted rent payments from the Dudleys to satisfy obligations which accrued during the pendency of either eviction action. For example, in Graham, the court held that the landlord did not waive a three day notice filed in April by accepting an insurance check in June as a credit for April and May's rent. Likewise, Julian could perhaps have accepted payment in June of May's rent without waiving the April notice of eviction. Julian could also have accepted rent in July for the past due obligations on May and June's rent. However, the fact that Julian could have accepted the rent at some point without waiving its eviction notices does not mean that Julian was required to accept the rent. The pertinent point is that the Dudleys were liable for the rent so long as they chose not to vacate the premises and they should have made provisions to set the money aside, either by putting the money aside in their own accounts or by asking the court during the first eviction action to escrow the money.
Moreover, although the Dudleys made late payments in the past, and in one instance, paid no rent at all, we do not agree that Julian is precluded from enforcing timely payments. InMibourn v. Aska (1946), 81 Ohio App. 79, the court stated that:
 "[w]hen a landlord, by a course of dealing in accepting overdue rent, has put a tenant off his guard, a forfeiture of the lease for a delayed payment of rent cannot be enforced, unless notice has been given to the tenant calling on him for a compliance with the strict terms of the lease; and equity will relieve from such a forfeiture."
See also, Fairborn Apts. v. Herman (Jan. 31, 1991), Greene App. No. 90 CA 28, unreported (finding that landlord waives the right to insist on punctual payment of rent by consistently accepting delinquent rent).
In the present case, the testimony was undisputed that Julian did not assume control over the Meadows complex until March 19, 1998. After that date, the Dudleys made a payment on April 6, which was accepted, together with the late fee. However, an eviction notice was given to the Dudleys on April 16, based on the fact that in Julian's opinion, only partial payment had been made, i.e., a balance was owed. Julian then proceeded with the eviction action. The only course of dealing that could be inferred from this conduct is that a late payment, with payment of the twenty dollar late fee, would be accepted, but partial payments would not be accepted. By contrast, the events pointed to by the Dudleys occurred before the time that Julian assumed control.
Furthermore, we again note that the Dudleys have referred to facts outside the record. Specifically, the Dudleys comment on letters allegedly sent to them by the Meadows on March 18 and March 25, 1998, which imply that payment arrangements could be made. As before, we have disregarded these facts, since they are not of record.
Finally, we do not accept the concept that by losing an eviction action, the landlord was required to give the Dudleys a reasonable amount of time to pay their rent beyond the time set out in the contract. As an initial point, we note that Mazarellav. MaGimes (Dec. 30, 1991), Cleveland M. C. No 91 CVF 30291, unreported, which is cited for this concept, was not attached to the Dudleys' brief and is not available to us through our electronic research. According to the Dudleys, Mazarella
indicates that if a landlord files an eviction action and is responsible for a deficiency in rent that arises, the landlord must give the tenant a reasonable opportunity to pay the rent that accrued during the first eviction action. The implication of the discussion in the Dudleys' brief is that if a tenant prevails in an eviction action, the landlord is obviously to blame for the nonpayment of rent and should allow a reasonable time for any deficiency to be paid. We disagree. The mere fact that the tenant prevails does not mean the landlord committed wrongful acts. Instead, the lawsuit could have been based on a legitimate disagreement about contractual terms or their application, and the court could simply have agreed with the tenant's interpretation.
In any event, the trial court appears to have applied the "reasonable time" concept. Although we would not have done so, we cannot say the error was prejudicial, since the court's decision operated favor of the party appealing the decision. See, Fada v.Information Sys. Networks Corp. (1994), 98 Ohio App.3d 785, 792
("existence of error does not require a disturbance of the judgment unless the error is materially prejudicial to the complaining party"). As we mentioned, the trial court found that Julian acted reasonably in giving the tenants an additional five days after the June 5 hearing to make full payment. In this regard, we stress that the Dudleys knew all along that their rent for May and June would be due, and there appears to have been no real question about the amount. The only real dispute in the first eviction hearing was whether the same amount was likewise due in March and whether the Dudleys had violated the lease agreement by failing to pay that amount when due. Therefore, the outcome of the first eviction hearing was irrelevant to the obligation to pay rent for May and June. Even if the Dudleys had been evicted, they still would have owed the $226 rent for May and June, based on their continued occupation of the premises.
Accordingly, based on the preceding discussion, the first assignment of error is without merit and is overruled.
 II
The second assignment of error relates to the trial court's failure to specifically find that no "good cause" existed to evict the Dudleys. The basis for this argument is Section 247.3, Title 24, C.F.R., which governs termination of rental agreements by landlords of federally subsidized housing projects. In a number of cases, we have found that federal regulations apply to private landlords who receive federal subsidies for their tenants. See,Gorsuch Homes, Inc. v. Wooten (1992), 73 Ohio App.3d 426;Fairborn Apts. v. Herman (Jan. 31, 1991), Greene App. No. 90 CA 28, unreported; and Northlake Hills Co-op. v. Barrett (Dec. 8, 1986), Montgomery App. No. 9699, unreported. For example, inNorthlake Hills, we found that a private landlord who voluntarily participates in the loan management set-aside program of Section 8 of the National Housing Act subjects itself to federal regulations that require "just or good cause" for terminating a tenant's right of occupancy. Id. at p. 2. Likewise, in Fairborn Apts., we applied the "good cause" requirement of Section 247.3, Title 24, C.F. R. to a private landlord operating a public housing project. Id. at p. 6-7.
Section 247.3, Title 24, C.F.R. provides that "[t]he landlord may not terminate any tenancy in a subsidized project except upon the following grounds: (1) material noncompliance with the rental agreement," * * * [or] "[o]ther good cause." Under the regulation, material noncompliance includes "[n]onpayment of rent or any other financial obligation due under the rental agreement (including any portion thereof) beyond any grace period permitted under State law, except that the payment of rent or any other financial obligation due under the rental agreement after the due date, but within the grace period permitted under State law, constitutes a minor violation."
Initially, in considering this point, we note that the Dudleys did not bring the application of Section 247.3, Title 24, C.F.R. or of any other federal regulation to the trial court's attention. As a result, we cannot consider this issue except under the plain error doctrine, which is to be used with extreme caution, "`under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Stiver v. Miami Valley CableCouncil (1995), 105 Ohio App.3d 313, 318 (citation omitted). We do not find such a miscarriage of justice on the facts presented in the present case.
In Fairborn Apts., we said that nonpayment of rent does not presumptively constitute good cause, and can be rebutted "due to `circumstances beyond [the tenant's control], prompt information, and diligent efforts to pay.'" Id. at p. 6. The circumstances beyond the tenant's control in Fairborn Apts. were that the tenant could not pay the rent because her purse had been stolen and that the tenant had not yet received her support checks. Additionally, the tenant tendered partial rent which the landlord accepted without objection. Id. at 7. Similarly, in Northlake Hills, we found a lack of good cause for lease termination where the tenant had previously always paid her rent in a timely fashion, but had reported to the police and landlord that money in her purse had been stolen. A representative of the landlord told her that she could pay the rent the following month, so long as she paid a late fee. However, when the tenant attempted to pay the rent the following month, including the late charges, the landlord had already served her with a notice of eviction. Id. at pp. 1 and 4.
By contrast, in the present case, no explanation was given at trial for the Dudleys' failure to have the money available to pay the full amount of the rent for May and June following the court hearing on June 5, 1998. Although the Dudleys argue that their failure to pay the rent in a timely fashion was due to circumstances beyond their control, the circumstances they point to are the pending eviction action and Julian's refusal to accept partial payments of rent. However, the eviction action ended on June 5, 1998, and the Dudleys should have had the full amount of the rent for May and June available for payment at that time. If circumstances beyond their control existed like the ones outlined in Northlake Hills and Fairborn Apts., those facts should have been presented at the hearing. In the absence of such evidence, we cannot find plain error in the trial court's failure to make a finding that good cause existed for the lease termination.
In light of the foregoing discussion, the second assignment of error is overruled.
 III
In the third assignment of error, the Dudleys contend that the trial court erred in failing to grant equitable relief to prevent forfeiture of their leasehold interest. The argument in this context is that the landlord could have accepted the rent when tendered in June without waiving the statutory three day notice. According to the Dudleys, this would have been rent for a past obligation (May's rent, which was past due), and would not have been rent in advance voiding the three day notice. Further, the Dudleys claim that the landlord allegedly caused its own deficiency in rent by refusing to accept the rent.
We have previously addressed this issue in ruling on the first assignment of error. In the past, we have held that courts have the ability to "relieve a tenant from consequences of forfeiture of a leasehold interest." Gorsuch Homes (1992),73 Ohio App.3d 426, 435. As we noted in Gorsuch Homes, "[w]hen a party raises an equitable defense, it is the responsibility of the court to weigh the equitable considerations before imposing a forfeiture." Id. at 436. In the present case, the Dudleys raised the issue of equity in their answer, by claiming that the May and June rents should be waived because of Julian's failure to accept rent that was tendered during the pendency of the first eviction action. The trial court did weigh these equities, but simply found against the Dudleys on this point. As we stressed above, we agree that the landlord was not required to accept partial payments of past due rent. Accordingly, the third assignment of error is without merit and is overruled.
 IV
In the final assignment of error, the Dudleys claim that the trial judge abused her discretion by improperly favoring Julian. Specifically, the Dudleys claim the trial court was prejudiced against them based on several comments that the judge made. First, the Dudleys feel the judge erroneously said no rent was paid for March, 1998, when the ledger indicated otherwise. Second, the Dudleys feel the judge incorrectly said that the Dudleys were complaining that May, June, and July's rent were tendered in part and rejected, when, in fact, payment in full for May was offered before the June 5, 1998 hearing. Additionally, the judge was allegedly biased in finding the five day period for paying the full amount of rent a reasonable time for persons in the Dudleys' economic situation. And finally, the judge is said to have been prejudiced in offering to allow Julian to submit evidence after trial about an agreement the Dudleys and Julian allegedly made.
After reviewing the transcript, we find no evidence of bias on the part of the trial judge. First, with reference to comments about rent, the court did not say that no rent had been paid in March. Instead, the court said (in reference to the first eviction case):
 "So it [the increased rent] did not apply in terms of March rent, but it did apply in terms of April rent. That does not mean no rent was due for March. It means that it was due at the old rate, $13."
This was a correct statement, and the court made no comment about whether rent was paid in March or not. As we mentioned previously, the March rent of $13 was paid, although late, on March 9. At that time, another late fee was added, which was never paid. As we also said earlier, the ledger indicates that at the end of March, a balance of $53 was owed to Julian.
Second, regarding the judge's comments about the Dudleys "complaining," the actual excerpt from the transcript is as follows:
 It is somewhat surprising to me that an argument is made that May's rent is tendered or that June or July's rent is tendered in part and rejected and that somehow there's a complaint about that. As everyone in this room probably knows, everyone involved in this case, at least, once they file an eviction, they can't accept the money. So now why are we complaining that they did not accept the money? Certainly, they were right not to accept a part payment, and I'm certainly not going to find that they did anything wrong rejecting that, if it was not payment in full.
Contrary to the Dudleys' contentions, the judge did not say that May's rent was tendered only in part. Instead, the court correctly summarized the evidence, which was that May's rent was tendered and that the June or July rent was tendered in part and was rejected. Furthermore, although the judge could have used more temperate language, the gist of her remarks, in her role as trier of fact, was that Julian reasonably refused to accept rent during the pendency of an eviction action. As we said above, this was not an inappropriate conclusion. Likewise, since we have found that the trial judge did not even need to consider whether the Dudleys were given a reasonable period of time to pay the overdue rent, the judge's finding on this point could not have been biased against the Dudleys.
Finally, we find no bias in the fact that the judge appeared to give Julian an opportunity to submit evidence after the hearing. During the examination of Devon Howell (the security officer for the complex), an issue arose regarding whether the Dudleys made an agreement at the June 5, 1998 court date to pay a sum of $300. Exactly what this sum was supposed to cover was not made clear. When the Dudleys' counsel objected to the testimony based on the fact that Howell wasn't present when any alleged agreement was made, the judge sustained the objection. The judge then said the agreement itself should be presented to the court because it was the "best evidence." When counsel for Julian indicated that the agreement could be faxed to the court, the judge commented as is reflected in the Dudleys' brief, i.e., that counsel for Julian should get the agreement there, because otherwise, the parties were simply going to offer differing versions about what the document said.
From the judge's remarks, it is unclear whether the judge intended to allow evidence to be submitted after the hearing. In view of the discussion about the document being faxed, the judge could have been under the impression that the issue would be resolved at the hearing, with both parties present. Considering evidence after the hearing without providing the opposing side a chance to cross-examine would obviously have been erroneous. However, this is not what occurred. Instead, the judge sustained the objection and no further mention of the agreement was made. Additionally, no further evidence was submitted after the hearing. Accordingly, we find no evidence of bias or error on the judge's part.
Based on the above discussion, the fourth assignment of error is overruled. Having overruled all the assignments of error, we affirm the judgment of the trial court. Our stay of the writ of execution is vacated, and any money deposited with the Greene County Clerk of Courts should be released to Julian Investments, Inc.
GRADY, P.J., concurs.