DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
As part of a longstanding lease dispute, Four Star Service, Inc. ("Four Star") brought an action for a declaratory judgment and injunctive relief against the City of Akron ("Akron"). Akron responded with a forcible entry and detainer counterclaim that included a demand for rent owed during the holdover period. On December 29, 1997, the Summit County Court of Common Pleas granted summary judgment for Akron and against Four Star on their cross motions for summary judgment with respect to the declaratory judgment, injunctive relief, and forcible entry and detainer claim. On May 11, 1998, the court issued a writ of restitution granting immediate possession to Akron.[1] Four Star has timely appealed the judgment entered against it.
Four Star has argued that (1) the trial court was not barred by res judicata from determining the legal effect of Four Star's 1990 notice that it was exercising its options for two terms; (2) its simultaneous exercise of two options was binding on Akron; (3) the confirmation of an arbitration decision in an earlier case entitled Four Star to the lease under the terms on which the arbitration decision was premised; and (4) by accepting and negotiating a rent payment check Akron waived its right to evict its commercial tenant. We sustain Four Star's first assignment of error because the matter was not directly and necessarily decided in previous litigation, nor did it arise out of a transaction or occurrence which was the subject matter of another action in which a final judgment was rendered. We sustain Four Star's second assignment of error because the option clause in the lease is subject to multiple interpretations, and a factual inquiry must be made regarding the intent of the contracting parties. We overrule Four Star's third and fourth assignments of error.
 I
On April 1, 1961, Wecker Properties and Akron Square, Inc. executed a lease agreement granting Akron Square, Inc. a thirty-year lease, renewable at the option of the lessee for seven additional five-year terms. In the event that the parties could not agree on the rent for the option periods, the contract provided that it would be determined by arbitration. Akron and Four Star are the successors in interest to the original parties to the lease, with Four Star replacing Akron Square, Inc. as the lessee and Akron replacing Wecker as the lessor. On February 6, 1990, Four Star notified Wecker that it was exercising its option for two additional five-year terms. Wecker responded that,
 * * * [The rent for] year one in the first of the five year renewal terms that you are exercising will be $9,000.00 per month[.]
 * * * Annual increases [determined by reference to the CPI/U Index] would continue to be made in each subsequent year of the first five year renewal term and the second five year renewal term using the same formula[.]
The proposed rent was unacceptable to Four Star. Because the parties could not ultimately agree upon rent, the issue was sent to arbitration. Just prior to the final report from the arbitrators, Four Star filed a declaratory and injunctive relief action, seeking an interpretation of "its rights under the Lease" and to enjoin the arbitration proceedings. In its judgment demand Four Star requested, inter alia, a declaration as to "whether Four Star may exercise it [sic] option * * * for each of the seven five-year terms individually or for two or more five-year terms together[.]" Once the arbitrators' report was completed, Four Star moved to vacate the award and Wecker filed an application to confirm it.
On May 6, 1993, the trial court issued a decision in the matter, which it framed as "the separate issue [of] the consideration of the Arbitration Award made on December 28, 1992." As part of the factual recitation in the "Judgment on Arbitration Award," order, the trial court said, "[Four Star] exercised an option for two successive five year terms, and [Akron] accepted it for a one year term." No analysis accompanied this statement. In the summary paragraph, the order states that "the Arbitration Award dated December 28, 1992[,] is confirmed." On February 10, 1995, the trial court declared that,
 the remaining claim set forth in the Plaintiff's complaint is moot since it relates to the occurrence of an arbitration proceeding which already occurred. The issues raised by the Defendant[s] in their counterclaim are also moot as a result of agreements made between the parties in the United States Bankruptcy Court[.]
Four Star Services, Inc., v. Wecker Properties (Feb. 10, 1995), Summit C.P. No. CV 92-12-4697, unreported ("Wecker"). Neither side has asserted that there were any interlocutory orders addressing the exercise of the options for successive terms, which would also have become final when the February 10, 1995 order was journalized.
Four Star appealed the Wecker decision to this court. This court affirmed it solely on the issue of the confirmation of the arbitration claim, noting that, "The lease required the arbitrators to determine exactly one issue: the amount of rent to be paid during the five-year option term. The arbitrators decided precisely that issue." Four Star Service, Inc. v. WeckerProperties (Sept. 27, 1995), Summit App. No. 17188, unreported, at 4 (Wecker II).
Four Star did not give Akron additional notice that it intended to remain through the second option period. Akron subsequently notified Four Star that its "[l]ease * * * expired on March 31, 1996 and has not been renewed." Although Akron refused to accept most of Four Star's rent checks, it did retain and cash the July 30, 1996 check for August rent. When Akron discovered the error it offered to return the check but Four Star refused to accept it.
 II A. Res judicata
1. Issue Preclusion
Collateral estoppel, also known as issue preclusion, stands for the premise that each issue may only be litigated once between any two parties. Under the doctrine of issue preclusion, when a court actually adjudicates an issue, those parties, and their privies, are barred from relitigating the issue.
Here, the May 6, 1993 order served the sole purpose of confirming the arbitrator's decision. The order did include reference to the option exercise in its factual recitation. Because of its placement, in the middle of the factual background, and because of the lack of accompanying legal analysis, we do not interpret this recitation to be the resolution of a disputed issue.[2] The Wecker order, making final the May 6, 1993 decision, declared moot all issues other than the confirmation of the arbitration decision. As this court noted, when we reviewed the decision in Wecker II, the sole issue before the arbitrators was the amount of rent to be paid during the option term. Because the issue of whether or not the exercise of multiple options was contractually permitted was not previously adjudicated, collateral estoppel cannot be used to bar litigation of it in the case subjudice.
b. Claim Preclusion
Claim preclusion bars subsequent actions that arise out of the transaction or occurrence that was the subject matter of a previous action in which a valid final judgment was rendered.Grava v. Parkman Twp (1995), 73 Ohio St.3d 379, syllabus. The language used by the Grava court is the same as that contained in Civ.R. 13(A), which articulates the claims that must be made as counterclaims or waived. With respect to mandatory counterclaims, the Ohio Supreme Court has defined an action arising out of the same transaction or occurrence as "one which is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts[.]" RettigEnterprises, Inc. v. Koehler (1994), 68 Ohio St.3d 274, paragraph two of the syllabus. Both claim preclusion and mandatory counterclaims serve the purpose of consolidating substantially related claims into one proceeding. Because of this, we use theGrava definition of "arising out of the same transaction or occurrence," as applied to counterclaims, to guide our claim preclusion analysis under the identical phrase.
The determination of whether an arbitrator's award should be affirmed requires the reviewing court to determine whether the arbitrator's decision draws its essence from the agreement and is not unlawful, arbitrary, or capricious. Lake Cty. Bd. of MentalRetardation Dev. Disabilities v. Professional Assn. for theTeaching of the Mentally Retarded (1994), 71 Ohio St.3d 15, 19, citing Findlay City Sch. Dist. Bd. of Edn. v. Findlay Edn. Assn.
(1990), 49 Ohio St.3d 129, 132-133. The court was required to review the relevant portion of the contract, examine the actions of the arbitrators, who were strangers to the original contract, and verify that the third parties' decision was consistent with the essence of the contract, and the authority granted to them thereunder.
The issue raised sub judice requires the trial court to determine the meaning of a different clause of the contract, over which authority was not granted to the arbitrators. The parties whose actions and intentions are at issue in this second dispute are both parties to the contract, rather than strangers to it. The resolution of this second issue depends upon the legal interpretation of a clause in the lease agreement, accompanied by a factual determination of the drafter's intentions if the clause is ambiguous on its face.
The disputed exercise of a second option was factually and legally unrelated to confirmation of the decision of the arbitrators regarding the level of rent during the option period. The two clauses are linked only because the exercise of an option triggers the possibility of a mid-contract dispute over the amount of rent. The arbitration clause provided a means of resolving that dispute. The parties could, and did, litigate the confirmation of the arbitrator's award without analyzing whether the contract permitted the simultaneous exercise of two or more options. Litigation of this second issue does not require re-examination of legal or factual issues decided by the first court. The two actions do not arise out of the same claim or transaction because they are not logically related, as defined by the Grava court. Because of this, claim preclusion does not bar litigation of the action sub judice. Four Star's first assignment of error is sustained.
 B. Simultaneous Exercise of Two Options
Four Star has asserted that the trial court erred in interpreting the lease clause regarding the exercise of the five-year options. The trial court determined that the Wecker
court had "actually and directly litigated" the exercise of the option for the second five year term. Solely because the trial court believed that the Wecker court had already adjudicated the matter, and had determined that Four Star's exercise of two options was not effective, it held that Akron was entitled to possession of the premises. As noted earlier, this court disagrees with that interpretation of the Wecker decision.
Neither the Wecker court, nor the trial court in the current case, examined the language of the contract and made a determination as to whether Four Star was permitted to exercise the second option in the manner that it did. If the original contract permitted it, a new ten-year contract was formed when Four Star notified Wecker it was exercising two options, binding Wecker[3] whether or not it wished to be bound.
The contract clause in question provides:
 At the expiration of the [initial thirty year] term of this Lease, Lessee shall have the option to again lease the demised premises for seven (7) additional successive five (5) year terms, provided Lessee notifies Lessor by registered mail not less than one (1) year prior to the expiration of the term herein granted of its desire to lease said property for an additional five (5) year term, and thereafter notifies Lessor in the same manner one (1) year prior to the expiration of each said five (5) year term of its desire to again lease said property.
The clause can be read as granting a right, present at the expiration of the initial term of the lease, to exercise all seven options.[4] In the alternative, it can be read as requiring the lessee to exercise each option successively. If the options must be exercised successively, the phrases governing the timing of the exercise of the options can also be read in more than one way. As argued by Four Star, the lease can be read to permit the exercise of each option at any time that is at least one year prior to the expiration of the term preceding that option period. This could include the successive exercise of all seven options within the initial term of the contract, since each would be exercised at least one year prior to the expiration of the preceding term. In contrast, it can also be read to require the exercise of each successive option, after the first, precisely one year before the expiration of the current term, thus limiting Four Star to a single day in which to exercise each of the second through seventh options. A third reasonable reading is that the exercise of an option is permitted only during the term immediately precedingthe option period but no less than one year before theexpiration of that term.
Because the contract clause is ambiguous without inquiry beyond the four corners of the lease, its interpretation is a mixed question of law and fact. The trial court did not resolve the ambiguity by determining the intent of the drafting parties, so neither party was entitled to summary judgment against the other. The issue must be remanded to the trial court for further proceedings. App.R. 12(D). Four Star's second assignment of error is sustained.
 C. Enforcement Of Arbitrator's Interpretation Of The Contract
Four Star has argued that the arbitrators made assumptions about the terms of the lease agreement when they determined the best rental value. It has contended that the majority arbitrators' report based its rental amount on an assumption that Four Star was entitled to possession for an additional thirty years, followed by seven five year options. Four Star has argued that, because the arbitrators based their rent on this assumption, Four Star is entitled to enforcement of the contract terms assumed by the arbitrators.
This court previously reviewed the trial court's confirmation of the arbitrator's award. In Wecker II, we observed that taken as a whole, the arbitrators' stated assumptions were consistent with the contract that provided for an initial thirty-year lease, followed by seven successive five-year options. We held that, "The lease required the arbitrators to determine exactly one issue: the amount of rent to be paid during the five-year option term. The arbitrators decided precisely that issue." Four Star's assertion that the arbitrator's assumptions about an issue, which was clearly outside their scope of authority, implicitly rewrote the contract is not well taken. Four Star's third assignment of error is overruled.
 D. Waiver of Right to Assert Unlawful Possession
The acceptance of advance rent payments is inconsistent with the notice to vacate. See Graham v. Pavarini (1983), 9 Ohio App.3d 89,92. Because of this, a landlord who has issued its three-day notice may not accept and retain advance rent payments without waiving its notice to vacate, as a matter of law. See id.
If the tenant remains in possession of the property, the landlord is, however, entitled to rent during the pendancy of the suit. See id. A landlord may, consistent with the pursuit of a forcible entry and detainer action, accept rent payments for liability already incurred. See id.; see also Cipolla v. McCloskey (Dec. 9, 1998), Lorain App. No. 97CA006866, unreported, at 4-6.
On June 10, 1996, Akron issued a notice to vacate to Four Star. Akron did not cash any rent checks from Four Star after March 31, 1996, aside from one it inadvertently cashed in August 1996. Four Star remained in possession of the premises through May 11, 1998, when the trial court issued a writ of restitution, returning the possession of the premises immediately to Akron. Akron is entitled to rent for the time during which Four Star retained possession. The first check refused by Akron was issued on April 1, 1996, for the April rent. By August 1996 Akron was entitled to past rent for April, May, June, and July.
When it cashed a check equivalent to the rent for one of those four months, Akron was not acting inconsistently with its notice to vacate. In addition, when it discovered it had inadvertently cashed a single check, Akron issued another notice to vacate. Assuming, arguendo, the inadvertent acceptance and retention waived the three day notice, Akron's forcible entry and detainer counterclaim could proceed based on its November three day notice to vacate, which was issued prior to its December 13, 1996 answer and counterclaim.
Four Star's final assignment of error is overruled.
 III
Four Star's first assignment of error is sustained because neither claim preclusion nor issue preclusion bar its assertion that its notice on February 6, 1990, exercised its option for the second five-year term under the lease. Its second assignment of error is sustained, because the interpretation of an ambiguous clause is a mixed question of fact and law. Because there are genuine issues of material fact, with respect to the intentions of the drafters of the contract, neither side was entitled to summary judgment on the matter. The third assignment of error is overruled because the only issue the arbitrators were authorized determine under the contract was the rental value during the option term; regardless of the assumptions on which they based that determination their assumptions do not alter the original contract. Finally, Four Star's fourth assignment of error is overruled because acceptance of past due rent is not inconsistent with a continued demand to vacate the premises and, in the alternative, new notice was given prior to the advancement of the forcible entry and detainer action.
The judgment of the trial court is affirmed, in part, reversed in part, and the cause remanded for further action consistent with this order.
Judgment affirmed in part, reversed in part, and cause remanded.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
WILLIAM R. BAIRD FOR THE COURT SLABY, P.J.
CONCURS CARR, J.
[1] The issue of past rent was not decided, and the judgment did not include an express determination that there was no just reason for delay. The judgment is final and appealable, nonetheless, because 54(B) is "by [its] nature * * * clearly inapplicable to proceedings in forcible entry and detainer on the authority of Civ.R. 1(C). Cuyahoga Housing Auth. v. Jackson
(1981), 67 Ohio St.2d 129, syllabus.
[2] The initial description is contained in an order entitled, "Judgment on Arbitration Award," which has been treated in two subsequent decisions, including one by this court, solely as confirmation of the arbitrator's award. Within its recitation of facts, the court made the statement, quoted supra, that "[Four Star] exercised an option for two successive five year terms, and [Akron] accepted it for a one year term." The usual understanding of an option is that it is a continuing offer which, upon exercise, creates a new, binding, and enforceable contract.Washington County Farm Assoc. v. B. O (1972), 31 Ohio App.2d 84,95, Stephenson J., dissenting. Viewing the exercise of this option as an offer by the lessee, subject to acceptance by the lessor, is also inconsistent with the wording of the lease. Seeinfra page. The court itself was not consistent in its description of the same circumstances, later describing it as "Four Star exercis[ing] its option to renew the lease for an additional period." In the absence of a reconciling explanation this court does not accept the inclusion of statements, which appear to offer factual background, as adjudication of a disputed legal matter.
[3] Now, Akron.
[4] The initial exchange in 1990 between the parties, in which Four Star notified Wecker it was exercising two options and Wecker responded with proposed rent for both option periods appears to support this interpretation.