[Cite as *IDC Brunswick Crossroads, L.L.C. v. Gack, Inc.*, 2012-Ohio-217.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | | |
|---|---|---|
| IDC BRUNSWICK CROSSROADS, LLC | | C.A. No. 10CA0088-M |
| Appellees | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| GACK, INC. | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 09 CIV 2417 |

DECISION AND JOURNAL ENTRY

Dated: January 23, 2012

BELFANCE, Presiding Judge.

{¶1} Gack, Inc. ("Gack") has appealed the trial court's issuance of a writ of restitution to IDC Brunswick Crossroads, LLC. ("IDC"). For the reasons set forth below, we vacate the writ of restitution.

I.

{¶2} In 1999, Gack entered into a five-year lease with three, five-year options for renewal. The lease provided for incremental increases in the monthly rent upon exercising the renewal option. Under a section entitled "Default[,]" the lease provided that, "[i]f [Gack] shall at any time be in default in the performance of any of the covenants, terms, conditions, or provisions of this [l]ease, * * * [IDC] may, by 10-day notice to [Gack], terminate this [l]ease[.]" This general provision was followed by a more specific notice provision concerning rent: "[w]ith regard to payment of rent, if [Gack] is late in payment, then [IDC] shall notify [Gack] in writing within 10 days. [Gack] shall be permitted no more than two late payments in any 12-month

period, or be deemed to have defaulted." Accordingly, if Gack paid its rent late three times in a 12-month period, it would be in default, but only if IDC notified Gack in writing within 10 days each time as required by the lease.

{¶3}  Gack exercised its first option to renew the lease in 2004, resulting in an increase in rent to $2,640 per month. At some point in 2009, IDC approached Gack about renovating the structure that Gack was leasing to allow a Sheetz gas station to share the structure. IDC submitted proposals to Gack, but Gack rejected them because, after the renovations, Gack's storefront would no longer be facing the desired street. During these discussions, Kyle Dietrich, the president of Gack, e-mailed Brett Davis, the president of IDC, to inform him that Gack was exercising its second renewal option. According to the lease, monthly rent would increase to $2,900, commencing in August 2009.

{¶4}  On September 10, 2009, Mr. Dietrich received an e-mail from Mr. Davis "notifying [Mr. Dietrich] that [IDC] received [Gack's] monthly rent payment[s] late that w[ere] due on the following date(s): August 1, 2009[, and] September 1, 2009[.]" That same day, Mr. Dietrich e-mailed Mr. Davis to inform him that Gack's bank statements indicated that "every payment since January ha[d] reached [IDC.]" Five days later, Mr. Davis responded that his "records show[ed] that [Gack's] August and September rent [wa]s late."

{¶5}  Mr. Dietrich again e-mailed Mr. Davis and requested clarification. Mr. Davis responded by saying that IDC had received rent payments of $2640 for both August and September. After Mr. Dietrich received this vague response, he e-mailed Mr. Davis one final time, stating, "I'm really confused. You received [the August and September rent payments] prior to the 1st of the month, and yet you are stating that they are late? How much earlier would you like to receive them?" It is unclear whether Mr. Davis ever responded. Nevertheless, it is

undisputed that he never clarified that the problem with Gack's rent was not timeliness but, rather, that Gack was still paying the old amount for rent instead of the higher rate following the renewal of the lease.

{¶6} On September 28, 2009, Mr. Dietrich e-mailed Mr. Davis to ask him if he had received the rent for October. However, Gack had again tendered $2,640 to IDC. Despite the lack of specificity in Mr. Davis' emails, Gack realized its error and promptly tendered $780 via an electronic check,[1] which was to be delivered by October 8, 2009. Even though this was the same method Gack always used to tender its rent, this check was never cashed and, after 90 days the bank issued notice to Gack that it was cancelling the check because it had not been cashed. Regardless, IDC served Gack via certified mail in October with the 10-day notice, as provided by the lease, that it was terminating the lease. When Gack refused to vacate the property, IDC initiated eviction proceedings against it.

{¶7} Following a hearing before a magistrate at which testimony and evidence were presented, the magistrate recommended that the trial court issue a writ of restitution to IDC. The trial court reviewed the magistrate's findings and held a hearing, at which it allowed counsel for both IDC and Gack to present argument. The trial court subsequently issued the writ of restitution. On a motion from Gack, the trial court amended the journal entry granting the writ of restitution to add Civ.R. 54(B) language that there was no just reason for delay.

{¶8} Gack has appealed, raising four assignments of error for review. For ease of discussion, we have rearranged its assignments of error.

---

[1] Gack requested, via its bank's website, that its bank send IDC a check for $780, which was how it paid all of its obligations under the lease.

II.

ASSIGNMENT OF ERROR IV

"THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN FINDING THAT THE COURT HAD JURISDICTION OVER THE MATTER AS THE PLAINTIFF HAD ACCEPTED RENT BEFORE IT WAS DUE."

{¶9}    In Gack's fourth assignment of error, it argues that, because IDC accepted future rent, the trial court lacked authority to proceed under R.C. Chapter 1923.  We agree.

{¶10}  Forcible entry and detainer is a summary proceeding authorized by statute.  R.C. 1923.01 et seq; *Sholiton Industries v. Royal Arms, Ltd.*, 2nd Dist. No. 17480, 1999 WL 355898, *8 (June 4, 1999).  Therefore, in order to proceed in an action for forcible entry and detainer, a landlord must comply with the requirements of R.C. Chapter 1923.  One such mandatory requirement is the notice to vacate.  R.C. 1923.04(A) ("[A] party desiring to commence an action under this chapter *shall* notify the adverse party to leave the premises, for the possession of which the action is about to be brought, three or more days before beginning the action[.]") (Emphasis added.).

{¶11}  Generally, a notice to vacate under R.C. 1923.04 is waived if a landlord accepts future rent from a tenant.  *King v. Dolton*, 9th Dist. No. 02CA0041, 2003-Ohio-2423, ¶ 11.  "A payment by a tenant is only a 'future rent payment' when it is for a period of occupancy after the date of the landlord's acceptance.  Rent paid for a period of occupancy before the landlord's acceptance of payment is past due."  (Internal citation omitted.)  *Sholiton Industries* at *7. "'When a landlord accepts a rent check for any period after the date of acceptance, he indicates his willingness to permit the tenant to stay through that period.  Such a willingness is inconsistent with a notice to vacate and thus effects a waiver.'"  *King* at ¶ 12, quoting *Sholiton Industries* at *7.  Essentially, by accepting future rent, a landlord invalidates the notice to vacate.

*Bristol Court v. Jones*, 4th Dist. No. 93-CA-520, 1994 WL 534920, *1 (Sept. 29, 1994). Nevertheless, during the pendency of the proceedings, nothing prevents the landlord from collecting rent for liability already incurred. *Presidential Park Apartments v. Colston*, 10th Dist. No. 79AP-604, 1980 WL 353341, *2 (Mar. 20, 1980).

{¶12} As reflected in its complaint, IDC served Gack with a notice to vacate on October 21, 2009. Nevertheless, Gack tendered rent for November, December, and January, and IDC accepted the rent. However, since Gack was $780 in arrears due to underpaying August through October, the monthly rent checks were necessarily applied to that deficiency. The remainder of the rent check ($2,120) would then be applied to the rest of the month.

{¶13} In other words, part of the rent check every month would be for the past liability and the rest would be for a future obligation. Therefore, by accepting Gack's checks for November, December, and January, IDC was waiving its notice to vacate. *See Cipolla v. McCloskey*, 9th Dist. No. 97CA006866, 1998 WL 852810, *2-*3 (Dec. 9, 1998) (holding that, by accepting rent that was partially for a past liability and partially for a future obligation, the landlord had waived its notice to vacate). Accordingly, because IDC accepted future rent, it was not entitled to a writ of restitution.

{¶14} IDC argues that its acceptance of the future rent did not constitute waiver because the lease provided that acceptance of rent did not waive its notice to vacate. However, while the acceptance of rent may not waive notice under the terms of the lease and, therefore, would not prevent a breach of contract claim, the lease does not supersede the requirements of R.C. Chapter 1923. If IDC wished to avail itself of the remedies provided by R.C. Chapter 1923, it needed to satisfy the statutory requirements.

{¶15} While this may, at first glance, appear to require IDC to choose between receiving rent and recovering its property, IDC has multiple protections under R.C. Chapter 1923. As discussed above, "[n]othing * * * prevents a landlord from accepting payments for rent past due." *Bristol Court*, 1994 WL 534920, *2. "Further, R.C. 1923.08 allows a trial court to require the tenant to post a bond if the forcible entry and detainer action is continued beyond eight days." *Id.* Nor would Gack be absolved of the obligation to pay the damages required by the lease. *See Dennis v. Morgan*, 89 Ohio St.3d 417 (2000), syllabus (An action in forcible entry and detainer "does not terminate the obligations of the tenant to the landlord to pay rent for the remainder of the term or until a new tenant is secured in the exercise of reasonable diligence.").

{¶16} As IDC waived the statutory notice, the trial court could not proceed in an action for forcible entry and detainer. Gack's fourth assignment of error is sustained.

ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN CONCLUDING THAT THE PLAINTIFF ESTABLISHED THEY HAD PROPER STANDING TO BRING AN ACTION IN FORCIBLE ENTRY AND DETAINER."

ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN CONCLUDING THAT IDC PROPERLY PROVIDED NOTICE OF DEFICIENCY TO GACK."

ASSIGNMENT OF ERROR III

"THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN CONCLUDING THAT LESSOR PROVIDED THE PROPER 10 DAY NOTICE TO TERMINATE THE LEASE AND VACATE THE PREMISES."

{¶17} Due to our resolution of Gack's fourth assignment of error, these assignments of error are moot, and, thus, we decline to address them. App.R. 12(A)(1)(c).

III.

**{¶18}** Gack's fourth assignment of error is sustained, and its first, second, and third assignments of error are moot. Because the trial court did not have authority to proceed on the merits of the matter, we vacate the judgment of the Medina County Court of Common Pleas and the cause is remanded for further proceedings consistent with this opinion.

Judgment vacated
and cause remanded.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
MOORE, J.
CONCUR

APPEARANCES:

RANDY VERMILYA, Attorney at Law, for Appellant.

LAURA A. HAUSER and KYLE G. BAKER, Attorneys at Law, for Appellee.