[Cite as *N. Face Properties, Inc. v. Lin*, 2013-Ohio-2281.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

NORTH FACE PROPERTIES, INC.,      :

    Plaintiff-Appellant,      :      CASE NO.  CA2012-09-083

                    :      <u>O P I N I O N</u>
- vs -               6/3/2013

                    :

DONG LIN,      :

    Defendant-Appellee.      :


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 11 CV 80556


David M. Pixley, 2160 Kettering Tower, Dayton, Ohio 45423, for plaintiff-appellant

John (Hui) Li, 6195 Lakota Drive, Cincinnati, Ohio 45243, for defendant-appellee


**PIPER, J.**

{¶ 1}   Plaintiff-appellant, North Face Properties, Inc. (North Face), appeals a decision of the Warren County Court of Common Pleas, dismissing its action for forcible entry and detainer (FED).

{¶ 2}   North Face owns a shopping mall located in Franklin, Ohio.  One of its tenants is the Fu Lin Chinese Restaurant, owned and operated by defendant-appellee, Dong Lin. North Face and Lin entered into a commercial lease, which set forth the terms of the rental

agreement and required Lin to abide by the rules and regulations of North Face's property agreement. These requirements included Lin's duty to schedule timely trash removal, proper storage and disposal of cooking grease, and proper maintenance and usage of an overhead exhaust fan system in the kitchen.

{¶ 3} Problems began to arise between Lin and the neighboring businesses, including a pizza restaurant and a laundromat. The businesses complained to North Face that Lin was not disposing of cooking grease properly, did not have trash removed in a timely manner, and was not properly removing kitchen exhaust fumes from the restaurant so that the other establishments began to smell like the Chinese restaurant. Lin and his wife were also combative with the other business owners, including an incident where Lin's wife spit on the owner of the pizza restaurant during a disagreement in the parking lot.

{¶ 4} According to the terms of the lease, North Face was required to serve Lin with a 30-day notice to apprise Lin of breach of lease issues, or other demands for remediation or cure. North Face served Lin with a 30-day notice on July 11, 2011, and demanded that Lin cure defaults regarding his wife's treatment of the pizza restaurant owner, the exhaust system in the kitchen, disposing of grease in a proper manner, scheduling trash pickup to occur at least three times a week, as well as to pay past-due rents and fees of $409.50. Lin paid the $409.50 soon after receiving the 30-day notice. However, on August 26, 2011, North Face served Lin with a three-day notice of eviction, and then filed its FED action when Lin did not vacate the premises according to North Face's three-day notice.

{¶ 5} The matter proceeded to a hearing in front of the magistrate on January 11, 2012. Between the time of North Face's three-day notice on August 26, 2011 and the magistrate's hearing on January 11, 2012, Lin submitted checks to North Face to pay rent for September, October, November, December, and January. North Face held Lin's checks and did not cash them until January 12, 2012, the day after the hearing before the magistrate.

The magistrate found in favor of North Face and recommended the issuance of a writ of restitution.

{¶ 6} In response to the magistrate's decision, Lin filed objections and leave to submit additional evidence to the trial court for its consideration. The trial court granted Lin leave to submit evidence that North Face cashed Lin's rent checks on the day after the magistrate's hearing. The trial court found that North Face waived its three-day notice by accepting future rents from Lin, and dismissed the FED action for lack of jurisdiction. North Face now appeals the trial court's dismissal of its FED action, raising the following assignment of error.

{¶ 7} THE TRIAL COURT ERRED BY DISMISSING THE APPELLANT'S COMPLAINT FOR WANT OF SUBJECT MATTER JURISDICTION.

{¶ 8} North Face argues that the trial court erred by dismissing its FED action because it did not waive its three-day notice by accepting rent from Lin.

{¶ 9} According to R.C. 1923.04, "a party desiring to commence an action under this chapter shall notify the adverse party to leave the premises, for the possession of which the action is about to be brought, three or more days before beginning the action * * *." "After serving a notice to vacate, it is inconsistent for a landlord to accept and retain rent payments *in advance* * * *. Under these circumstances, the landlord must be deemed to have waived the notice to vacate as a matter of law." (Emphasis sic.) *Graham v. Pavarini*, 9 Ohio App.3d 89, 92 (8th Dist.1983), quoting *Presidential Park Apartments v. Colston*, 10th Dist. No. 79AP-604, 1980 WL 353341 (Mar. 20, 1980); *see also Morrow v. Gates*, 12th Dist. No. CA91-11-021, 1992 WL 156116 (June 29, 1992).

{¶ 10} A landlord may accept rent payments that were due and owing, or "obligations already incurred," at the time of the three-day notice without waiving such. *King v. Dolton*, 9th Dist. No. 02CA0041, 2003-Ohio-2423, ¶ 12, citing *Sholiton Indus, Inc. v. Royal Arms,*

*Ltd.*, 2d Dist. No. 17480, 1999 WL 355898 (June 4, 1999). However, acceptance of *future* rent payments following service of the statutory three-day notice "waives or invalidates the service of the statutory notice, and the landlord may therefore not proceed with a forcible entry and detainer action." *Bristol Court v. Jones*, 4th Dist. No. 93-CA-520, 1994 WL 534920, *1 (Sept. 29, 1994).

{¶ 11} Pertinent to whether a landlord waives a three-day notice, a landlord "accepts" future rent by cashing a check for future rent after a three-day notice has been issued or holds payment without informing the tenant that "the checks were not accepted as payment of rent or that the checks were being held for evidentiary purposes." *King v. Dolton*, 9th Dist. No. 02CA0041, 2003-Ohio-2423, ¶ 15.

{¶ 12} The record indicates that North Face served Lin with the three-day notice on August 26, 2011. At that time, Lin was current on his rent obligation, and had cured the $409.50 deficit as instructed in North Face's 30-day notice letter. After being served the three-day notice, Lin then sent North Face rent checks for September, October, November, December, and January.[1]

{¶ 13} North Face held the checks, the "future rent," without telling Lin that it was holding the checks for evidentiary purposes and was not otherwise accepting the checks as payment of rent. Instead of refusing the checks, or returning the checks to Lin after the hearing, North Face cashed the checks and thereby waived the three-day notice it had provided. *See Associated Estates Corp. v. Bartell*, 24 Ohio App.3d 6 (8th Dist.1985) (noting that a while a landlord accepts a check by cashing it, a landlord does not accept a check by retaining it for evidentiary purposes and then tendering it back to the tenant on the day of the

---

1. Even if we were to disregard the checks for September through December, the fact remains that North Face cashed the check for January, which included rent paid for days that Lin had not yet used the premises, including January 13 through the end of the month.

trial); and *Juergens v. Strileckyj*, 2d Dist. No. 2010 CA 36, 2010-Ohio-5159, ¶ 25 (finding that landlord did not accept tenant's checks were the landlord's "decision to hold the checks *without cashing them* did not constitute an acceptance" of the rent payments). (Emphasis added.)

{¶ 14} North Face argues that it was permitted to cash the checks without waiving the three-day notice because the hearing had already occurred. We disagree. North Face cashed the checks after the magistrate held the hearing, but the magistrate had not issued a ruling, Lin had not been afforded his rights to object to the decision, nor had the trial court made a final judgment in the case. Therefore, the FED action was still pending at the time North Face accepted the checks by cashing them, and North Face could not take action adverse to its notice to vacate. While the law may, at first blush, seem to limit a landlord's chance to recover, such is not the case.

{¶ 15} Ohio courts have recognized that landlords have the right to collect past rents, and that landlords also have statutory means for protecting themselves against tenants who continue to reside in the premises during the FED proceeding. For example, R.C. 1923.08 permits a trial court to require a tenant to post a bond, and a landlord has a legal right to seek damages once awarded FED. *Dennis v. Morgan*, 89 Ohio St.3d 417 (2000). In *Dennis v. Morgan*, the Ohio Supreme Court stated,

> We find that Ohio's statutory scheme does not force a landlord to choose between eviction and a claim for damages for breach of contract. Rather, R.C. 1923.03 states, "Judgments under this chapter [regarding forcible entry and detainer actions] are not a bar to a later action brought by either party." Thus, R.C. Chapter 1923, by its own terms, does not limit landlords' remedies upon a breach merely to securing their property through eviction. Lessors may also bring a separate suit for damages brought about by the lessee's breach.

*Id.* at 419. While accepting past due rents or seeking damages after a FED action has been successful are within a landlord's rights, accepting future rent from a tenant when that tenant

has been given notice of eviction is inconsistent with a landlord's intent that the tenant be forcibly removed from the premises.

{¶ 16} North Face also argues that it did not waive the three-day notice by cashing Lin's checks because it was evicting Lin for breach of lease terms rather than for non-payment of rent. Again, we disagree. The theory remains the same, whether based upon non-payment of rent or breach of lease; a landlord who accepts future rental payments is acting inconsistently with a three-day notice to vacate the premises. "A lessor on condition broken by lessee may elect to forfeit the lease, or to waive the forfeiture. * * * If after knowledge of the breach, the lessor, prior to taking any action to forfeit the lease, accepts rent from the lessee, or his assignee, which rent accrued after the breach, he waives the right of forfeiture." *Petropoulos v. Clinical Pathology Facility, Inc.,* 10th Dist. No. 87AP-685, 1988 WL 24397, *4 (Feb. 18, 1988); *see also Presidential Park Apartments v. Colston,* 1980 WL 353341 (finding that landlord waived three-day notice after instituting FED action for breach of lease terms, rather than failure to pay rent, where the landlord accepted future rent payments after issuing the three-day notice).

{¶ 17} The only difference created by eviction based upon breach instead of non-payment of rent essentially is that North Face has waived its three-day notice but may re-file its FED action after providing Lin with another three-day notice, assuming of course, that North Face does not accept any future rents upon its issuance of a new three-day notice. *Moran v. Gaskella,* 5th Dist. No. 2011-CA-21, 2012-Ohio-1158; *see also Morrow v. Gates,* 12th Dist. No. CA91-11-021, 1992 WL 156116, (June 29, 1992) (finding waiver of three-day notice was cured by issuance of second three-day notice and subsequent motion for FED).

{¶ 18} North Face also argues that the trial court erred by staying the judgment of the magistrate. However, as discussed above, the trial court lacked jurisdiction to proceed on North Face's FED action because North Face waived the three-day statutory requirement.

As such, the trial court did not err in not granting North Face restitution of the property as recommended by the magistrate.

{¶ 19} Having found that North Face waived its three-day notice, the trial court did not err in dismissing the FED action for lack of jurisdiction. North Face's sole assignment of error is therefore overruled.

{¶ 20} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.