[Cite as *Urban Partnership Bank v. Mosezit Academy, Inc.*, 2014-Ohio-3721.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100712**

# URBAN PARTNERSHIP BANK

PLAINTIFF-APPELLEE

vs.

# MOSEZIT ACADEMY, INC.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-806982

**BEFORE:** Rocco, P.J., Keough, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** August 28, 2014

**ATTORNEY FOR APPELLANT**

Mark E. Owens
J.P. Amourgis & Associates
3200 W. Market Street, Suite 106
Akron, Ohio    44333

**ATTORNEYS FOR APPELLEE**

Edward A. Proctor
Donald C. Bulea
Giffen & Kaminski, L.L.C.
1300 E. Ninth Street, Suite 1600
Cleveland, Ohio    44114

KENNETH A. ROCCO, P.J.:

{¶1} Defendant-appellant Mosezit Academy, Inc. ("Mosezit") appeals the judgment of the Cuyahoga County Court of Common Pleas in favor of plaintiff-appellee Urban Partnership Bank ("UPB") on UPB's claims for forcible entry and detainer and termination of tenancy. We find no merit to the appeal and affirm the trial court's judgment.

{¶2} This case involves a commercial eviction. UPB owns commercial real property located at 3150 Mayfield Road, Cleveland Heights, Ohio (the "property"). Mosezit operates a child care and learning center on the property. On March 14, 2012, UPB and Mosezit entered into a month-to-month commercial lease for the property (the "lease"). Under the terms of the lease, Mosezit agreed to pay a monthly rent of $4,000. The rent was due on the first day of each month until termination of the lease. The lease could be terminated by either party at the end of any month after 10 days' written notice.

{¶3} On April 25, 2012, UPB and Mosezit entered into a commercial land installment contract pursuant to which Mosezit agreed to purchase the property from UPB for $350,000 (the "land installment contract"). Under the terms of the land installment contract, Mosezit was to make quarterly installment payments of $40,000 to UPB from April 1, 2012 to April 1, 2014. The purchase price was "separate and apart from and in addition to" the rent due from Mosezit to UPB under the lease. Mosezit made the first quarterly payment, due April 1, 2012, on June 1, 2012, but made no other quarterly payments due under the land installment contract. Mosezit does not dispute that it

defaulted on its obligations under the land installment contract and that it thereby breached the land installment contract.

{¶4} In light of its default, on November 1, 2012, UPB served Mosezit with a notice of forfeiture, advising Mosezit that, under the terms of the land installment contract, the contract would stand forfeited unless Mosezit made the past due quarterly payments[1] within ten days, and demanding that Mosezit leave the premises. That same date, UPB also served Mosezit with a notice to vacate the premises for nonpayment of the rent due September 1, 2012 and October 1, 2012 and failure to meet its other obligations under the lease.[2]

{¶5} UPB filed its original complaint for forcible entry and detainer, forfeiture and cancellation of land contact, and money damages in the Cleveland Heights Municipal Court on November 28, 2012. On December 26, 2012, the parties agreed that Mosezit could retain possession of the property if Mosezit paid UPB $20,500 for rent and expenses through January 2013. On January 25, 2013, the municipal court issued an order concluding that Mosezit had complied with the parties' agreement and denied UPB's request for a writ of restitution of the property.

---

[1] The November 1, 2012 notice of forfeiture was based on Mosezit's failure to make the quarterly payments due July 1, 2012 and October 1, 2012 under the land installment contact.

[2] Under paragraph 19 of the land installment contract, Mosezit's uncured default on the land installment contract entitled UPB to terminate Mosezit's right of possession under both the lease and the land installment contract and to repossess the premises, among other remedies.

{¶6} On January 25, 2013, UPB served Mosezit with a notice of termination of the lease, effective March 31, 2013. Mosezit, however, refused to vacate the property. Accordingly, on April 11, 2013, UPB served Mosezit with a three-day notice to vacate the property. The notice to vacate was based on Mosezit's failure to vacate the premises pursuant to the January 25, 2013 notice of lease termination and its failure to pay the rent due March 1, 2013.

{¶7} In May 2013, after Mosezit filed a counterclaim for breach of lease, breach of contract, and unjust enrichment that exceeded the jurisdictional limits of the municipal court, the action was transferred to the Cuyahoga County Common Pleas Court.[3] On July 12, 2013, UPB filed an amended complaint, asserting causes of action against Mosezit for forcible entry and detainer and termination of tenancy, money damages for unpaid rent, forfeiture and cancellation of the land installment contact, and frivolous conduct under R.C. 2323.51 relating to Mosezit's counterclaim. On August 14, 2013, Mosezit filed its answer, denying the material allegations of the amended complaint and asserting various affirmative defenses.

{¶8} On October 4, 2013, the trial court conducted an evidentiary hearing on UPB's claims for forcible entry and detainer and termination of tenancy and for forfeiture and cancellation of the land installment contact. In support of its claims, UPB presented

---

[3]On April 25, 2013, UPB filed a second action for forcible entry and detainer and money damages against Mosezit in the Cleveland Heights Municipal Court, Case No. CVF 1300535. On June 18, 2013, the municipal court entered an order declining to exercise jurisdiction in that case due to the pendency of this action, concluding that the common pleas court "has concurrent jurisdiction to hear and decide issues of possession."

testimony from the president of the property management company acting on behalf of UPB and documentary evidence establishing that (1) the parties had entered into a land installment contract and month-to-month lease relating to the property, (2) Mosezit had defaulted on the land installment contract and had been served with a notice of forfeiture following the default, and (3) UPB had sent written notice to Mosezit terminating the lease effective March 31, 2013, and a notice to vacate the premises on April 11, 2013, but that Mosezit refused to vacate the property. In response, Mosezit offered testimony from its center director and copies of bank checks constituting Mosezit's rent payments from April 2013 through September 2013.[4] Although she acknowledged that Mosezit had defaulted on the land installment contract, the center director explained that Mosezit had not vacated the property because UPB continued to accept rent payments from Mosezit after it issued the notice to vacate. Mosezit argued that by accepting rent payments after it issued the notice to vacate, UPB had waived the notice to vacate, and, therefore, could not proceed with its forcible and detainer action. In response, UPB maintained that it did not waive its right to eviction because (1) none of the rent payments for April to September 2013 were submitted by the first of the month, as required under the terms of the lease, and were, therefore, accepted as mitigation, and not as a future rent payment, and (2) the lease contained a provision that allowed UPB to collect earned rent while pursuing an eviction.

---

[4] Copies of these checks are not included in the record.

{¶9} The trial court agreed with UPB. On November 5, 2013, the trial court entered judgment in favor of UPB on its claims for forcible entry and detainer and termination of tenancy under the lease and for forfeiture and cancellation of the land installment contact. The trial court held that because UPB did not accept rent payments from Mosezit in advance, but rather, after they were due, it did not waive its right to evict Mosezit by accepting rent payments. The trial court further noted that "UPB's continued acceptance of later rental payments was made in accordance with the express terms of both the land installment contract and the lease agreement." As the trial court explained:

> [B]y agreement of the parties, UPB retained the right, under the terms of the contract and lease, to pursue an eviction as the result of any default on the land installment contract, while simultaneously accepting past due rental payments under the Lease. "The conclusion that acceptance of rental payments did not waive the statutory eviction notice is particularly appropriate in this case, since the parties expressly agreed that landlords retained their right to collect earned rentals without waiving their right to evict." *Graham v. Pavarini,* 9 Ohio App.3d 89, 458 N.E.2d 421 [(8th Dist.1983)]. Therefore, the Court finds that UPB did not waive its right to the eviction of Defendant by accepting rental payments during the pendency of this claim.

{¶10} The trial court terminated both the lease and land installment contract and ordered Mosezit to vacate the property on or before December 16, 2013.

{¶11} Mosezit appealed the trial court's judgment, presenting the following assignment of error for review:

> The Trial Court committed reversible error by entering judgment in favor of the landlord bank on its cause of action for forcible entry and detainer when it was uncontroverted that the bank accepted and never returned or refunded future regularly monthly rent payments under the subject commercial lease each and every month in the amount of $4,000 each for the months of

March, 2013 through September, 2013, including the months subsequent to the bank's service of its Notice to Vacate Premises on April 11, 2013.

**{¶12}** Mosezit argues that, based on "black letter law in Ohio," UPB waived its notice to vacate when it accepted "future rent payments" and that the trial court, therefore, erred as a matter of law in entering judgment in favor of UPB. UPB maintains that it was permitted, under both the terms of the lease and installment land contract and "controlling Eighth District case law," to accept Mosezit's "past due rent" while simultaneously pursuing a forcible entry and detainer action and that, therefore, no waiver occurred.

**{¶13}** A forcible entry and detainer action is a summary proceeding authorized by statute. R.C. 1923.01 et seq. To proceed with an action for forcible entry and detainer, a lessor must comply with the requirements of R.C. Chapter 1923. *IDC Brunswick Crossroads, LLC v. Gack, Inc.,* 9th Dist. Medina No. 10CA0088-M, 2012-Ohio-217, ¶ 10. R.C. 1923.04(A) requires that a lessor give a lessee at least three days' notice before commencing a forcible entry and detainer action. R.C. 1923.04(A) ("[A] party desiring to commence an action under this chapter shall notify the adverse party to leave the premises, for the possession of which the action is about to be brought, three or more days before beginning the action[.]"). "Proper service of the three-day notice to vacate the premises is a condition precedent to the commencement of a forcible entry and detainer action." *Associated Estates Corp. v. Bartell*, 24 Ohio App.3d 6, 9, 492 N.E.2d 841 (8th Dist.1985). "[I]t is reversible error for a trial court to adjudge the merits of a case if no notice has been given." *Sholiton Industries v. Royal Arms, Ltd.*, 2d Dist. Montgomery

No. 17480, 1999 Ohio App. LEXIS 2531, *17 (June 4, 1999), citing *Shimko v. Marks*, 91 Ohio App.3d 458, 463, 632 N.E.2d 990 (5th Dist.1993). Likewise, a forcible entry and detainer action cannot proceed if a landlord has waived the notice to vacate. *Associated Estates* at 9. If a lessor waives the notice to vacate, the forcible entry and detainer action "has not been properly commenced," and the trial court "commits reversible error if it proceeds on the merits of the case" on the eviction claim. *Id.*; *Colbert v. McLemore*, 8th Dist. Cuyahoga No. 81961, 2003-Ohio-3255, ¶ 6.

{¶14} "'After serving a notice to vacate, it is inconsistent for a landlord to accept and retain rent payments *in advance*.'" *Graham v. Pavarini*, 9 Ohio App.3d 89, 92, 458 N.E.2d 421 (8th Dist.1983), quoting *Presidential Park Apartments v. Colston*, 10th Dist. Franklin No. 79AP-604, 1980 Ohio App. LEXIS 4819 (Mar. 20, 1980). Accordingly, although whether a lessor waives the notice requirement is typically an issue of fact, it is the "generally accepted rule in Ohio" that a notice to vacate is deemed waived as a matter of law if a lessor accepts "future" rent payments from a lessee after serving a notice to vacate the premises. *Sholiton Industries*, 1999 Ohio App. LEXIS 2531 at *17; *Associated Estates*, 24 Ohio App.3d at 9, 492 N.E.2d 841; *King v. Dolton*, 9th Dist. Wayne No. 02CA0041, 2003-Ohio-2423, ¶ 11; *see also N. Face Properties, Inc. v. Lin*, 12th Dist. Warren No. CA2012-09-083, 2013-Ohio-2281, ¶ 10 ("acceptance of *future* rent payments following service of the statutory three-day notice 'waives or invalidates the service of the statutory notice, and the landlord may therefore not proceed with a forcible entry and detainer action'"), quoting *Bristol Court v. Jones,* 4th Dist. Pike No.

93-CA-520, 1994 Ohio App. LEXIS 4479, *3 (Sept. 29, 1994); *Colbert* at ¶ 8-9 (trial court erred in entering judgment and writ of execution in favor of landlord where tenant was current on rent at the time landlord served three-day notice to vacate and landlord accepted "future rent" after notice was served). However, a lessor does not waive the notice to vacate if, after service of the notice, the lessor accepts rent payments from a lessee in occupancy that were "past due" or for "liability already incurred." *Id.* at ¶ 7; *Graham* at 92; *see also IDC Brunswick Crossroads* at ¶ 11 (During the pendency of forcible entry and detainer proceedings, "nothing prevents the landlord from collecting rent for liability already incurred."), citing *Presidential Park Apartments* at *4.

**{¶15}** In this context, a lessee's rent payment constitutes a "future" rent payment only "'when it is for a period of occupancy after the date of the [lessor's] acceptance'" of the rent payment. *IDC Brunswick Crossroads* at ¶ 11, quoting *Sholiton Industries*, 1999 Ohio App. LEXIS 2531 at *18.[5] "Past due" rent is "'rent paid for a period of

---

[5] In making this determination, we are mindful that this court and certain other Ohio courts have previously suggested that a "future" rent payment for purposes of waiver of a notice to vacate "includes payment for *any period* subsequent to the three-day eviction notice," i.e., without regard to whether the payment was for a period of occupancy that pre-dated or post-dated the lessor's acceptance of the payment by the lessor. (Emphasis added.) *Knights Ctr. Corp. v. Thomas*, 8th Dist. Cuyahoga No. 49636, 1985 Ohio App. LEXIS 7742, *4 (May 23, 1985); *see also Colbert*, 2003-Ohio-3255 ("in light of landlord's admission that he accepted rent after he posted the three-day notice, the trial court erred in issuing the writ of restitution"); *Ebbing v. Mathis*, 12th Dist. Butler No. CA2013-01-014, 2013-Ohio-3880, ¶ 19 (observing that "[a]ppellate courts in this state are split on the meaning of the term "future rent," as used in this context"). Nevertheless, we believe the better practice — i.e., one that is more consistent with the rationale underlying the waiver rule as discussed in paragraph 17 *infra* — is to find waiver only where a rent payment is accepted for a period of occupancy after the date of the lessor's acceptance of the rent payment. Indeed, in *Knights Ctr. Corp.,* the "future" rent payment the landlord accepted following issuance of the notice to vacate, which the court held resulted in a waiver of the notice, was, at least in part, for a period of occupancy

occupancy before the landlord's acceptance of payment.'" *Id.,* quoting *Sholiton Industries* at *18.

{¶16} A lessor "accepts" a future rent payment by cashing a check for future rent, where a rent payment is made by automatic deposit into the lessor's account, or where a lessor holds payment without informing the lessee that "'the checks were not being accepted as payment of rent or that the checks were being held for evidentiary purposes.'" *See, e.g., N. Face Properties*, 2013-Ohio-2281 at ¶ 11, quoting *King v. Dolton*, 9th Dist. Wayne No. 02CA0041, 2003-Ohio-2423, ¶ 15; *Associated Estates*, 24 Ohio App.3d at 9, 492 N.E.2d 841.

{¶17} The rationale underlying the distinction between acceptance of "future" rent and the acceptance of "past due" rent payments following the issuance of a notice to vacate is that "'[w]hen a landlord accepts a rent check for any period after the date of acceptance, he indicates his willingness to permit the tenant to stay through that period.

---

after the date of acceptance of the rent payment. *Knights Ctr. Corp.* at *4 (landlord waived three-day eviction notice under R.C. 1923.04 by accepting future rent where landlord served its notice on August 17 and subsequently, on August 21 and 23, accepted rent payments for the period ending August 31). Similar fact patterns were present in *Colbert* and *Associated Estates,* where this court likewise determined that waiver of the three-day notice occurred. *See Colbert*, 2003-Ohio-3255, ¶ 8-9 (trial court erred in entering judgment and writ of execution in favor of landlord where tenant was current on rent at the time landlord served three-day notice to vacate on July 1 and landlord accepted "future rent" that same day, after notice was served); *Associated Estates,* 24 Ohio App.3d 6, 492 N.E.2d 841 (landlord waived three-day eviction notice served on January 30, 1984 where rent checks were deposited into landlord's account and cashed for February, March, and April rent on February 2, February 29, and April 4, respectively); *see also IDC Brunswick Crossroads*, 2012-Ohio-217 at ¶ 13 (by accepting rent checks that, at the time of acceptance, were partially for a past liability and partially for a future obligation, landlord waived notice to vacate). *Compare Graham,* 9 Ohio App.3d at 91-92, 458 N.E.2d 421 (landlord did not waive notice to vacate served on April 16, 1978 by accepting, on June 23, a check as a credit for tenant's April and May rent).

Such a willingness is inconsistent with a notice to vacate and thus effects a waiver.'" *King* at ¶ 12, quoting *Sholiton Industries* at \*17. A lessee, however, continues to incur liability for rent for any period in which it remains in possession of the premises after a notice to vacate has been served. *Julian Invests., Inc. v. Dudley*, 2d Dist. Greene No. 98-CA-85, 1999 Ohio App. LEXIS 429, \*8 (Feb. 12, 1999) ("a tenant in occupancy during an eviction remains liable for rent during the pendency of the action"), citing *Graham,* 9 Ohio App.3d 89, 458 N.E.2d 421. Thus, it is not inconsistent for a lessor to collect rent after it becomes "past due," i.e., rent attributable to a period of occupancy that pre-dates the lessor's acceptance of the rent, and still insist on a right to present possession of the premises. Such a determination is "particularly appropriate" where, as here, Mosezit refused to vacate the premises after UPB terminated the month-to-month tenancy pursuant to the terms of the lease, and the parties expressly agreed that UPB retained its right to collect rent without waiving its right to evict.[6] *See Graham* at 92

---

[6]Paragraph 18.2 of the lease provides, in relevant part:

> On the occurrence of any Default under the Lease by Lessee, Lessor may without notice and without limiting Lessor in the exercise of any right or remedy which Lessor may have, either in law or equity:
>
> \* \* \*
> (c) Pursue any other remedy now or hereafter available to Lessor under the laws or judicial decisions of the state of Ohio.
>
> If Lessor enters the Leased Premises under the provisions of subparagraph (c) above Lessor shall not be deemed to have terminated the Lease, or the liability of the Lessee to pay any other charges that are due or thereafter accruing, or Lessee's liability for damages under any of the provisions hereof.

(conclusion that landlord did not waive notice to vacate by accepting past due rent was "particularly appropriate" where parties expressly agreed in the lease that the landlord retained his right "to receive and collect any rent due" "[a]fter the service of any notice or commencement of any suit" and that "such collection or receipt shall not operate as a waiver of nor affect such notice [or] suit").

{¶18} Accordingly, the issue with respect to Mosezit's waiver argument is whether any of the rent payments UPB accepted after it issued its notice of occupancy were, at least in part, payments for future occupancy after the date of acceptance. Mosezit argues that the testimony of its center director and copies of the official rent checks Mosezit sent to UPB, "marked and submitted at the hearing, collectively, as Defendant's Exhibit 1," establish that the rent payments UPB accepted from Mosezit subsequent to notice to vacate were "future rent payments" and that the trial court, therefore, erred in determining that UPB did not waive the notice to vacate. UPB counters that all of the rent payments at issue were made "after the due date" for rent that was "past due" and that it, therefore, did not waive its right to evict.

---

Paragraph 19(b) of the land installment contract provides, in relevant part, that after a default on the contract, UPB "may terminate [Mosezit's] right of possession under the Lease and this Contract and repossess the Premises by forcible entry and detainer suit * * *" and that "[i]n such event,"

> [UPB] may recover * * * any other amounts necessary to compensate [UPB] for all damages proximately caused by [Mosezit's] failure to perform its obligations under this Contract * * *. [N]o suit or recovery of any portion due hereunder shall be deemed a waiver of [UPB's] right to collect all amounts to which [UPB] is entitled hereunder, nor shall the same serve as any defense to any subsequent suit brought for any amount not theretofore reduced to judgment[.]

**{¶19}** The record reveals that after UPB served the April 11, 2013 notice to vacate, Mosezit made rent payments for April 2013 through September 2013. It is undisputed that none of these rent payments was made on time, i.e., by the first of the month as required under the lease.[7] There is, however, no testimony or any other evidence in the record as to precisely when UPB "accepted" any of these rent payments.[8] Although such information might be discerned from the cancelled checks Mosezit used to make its rent payments, copies of the "official bank checks" upon which Mosezit relies for her waiver argument have not been included in the record on appeal.

**{¶20}** As appellant, Mosezit was responsible for providing this court with the complete record of the facts, testimony, and evidentiary matters necessary to support its assignment of error. *State v. Smith*, 8th Dist. Cuyahoga No. 94063 2010-Ohio-3512, ¶ 10; App.R. 9. This includes the exhibits that were submitted to the trial court. *Freedom Mtge. Corp. v. Petty*, 8th Dist. Cuyahoga No. 95834, 2011-Ohio-3067, ¶ 68; App.R. 9(A). In the absence of evidence that is necessary to resolve an assignment of error, a reviewing court must presume the regularity of the trial court's proceedings and affirm

---

[7] As discussed above, what matters for purposes of determining whether a lessor waived a notice to vacate by accepting a rent payment is not whether the rent payment was made "on time," but rather, whether the rent payment was, at least in part, for a period of occupancy following the date of the lessor's acceptance of the payment.

[8] Although Mosezit claims that the testimony of its center director, Lorraine Glover Campbell ("Campbell") established waiver, Campbell testified only that Mosezit paid, and that UPB accepted, rent payments for April through September 2013 after the notice to vacate was issued and that Mosezit typically made its rent payments "around the middle of the month"; she did not testify as to the specific dates on which UPB accepted any of the rent payments at issue.

the trial court's judgment. *See Tabbaa v. Raslan*, 8th Dist. Cuyahoga No. 97055, 2012-Ohio-367, ¶ 10-12. Because the copies of the checks Mosezit submitted are not a part of the record,[9] and Mosezit has pointed to no other evidence in the record establishing that any of the rent payments UPB accepted after it issued the notice to vacate was for "future" rent, i.e., rent for a period of occupancy after the date of acceptance of the rent payment by UPB, we must presume regularity and affirm the trial court's decision that "UPB did not waive its right to the eviction of [Mosezit] by accepting rental payments during the pendency of this claim." Accordingly, Mosezit's sole assignment of error is overruled.

**{¶21}** Judgment affirmed.

---

[9]Indeed, it is not entirely clear from the transcript of the October 4, 2013 evidentiary hearing whether the checks were, in fact, admitted into evidence. Although the transcript reflects that Mosezit requested that the exhibit consisting of the checks be admitted, it does not appear from the record that the trial court ever ruled on that request:

> [Mosezit's counsel]: Your Honor, I would like to submit Defendant's Exhibit 1 and I don't have any further questions.

> THE COURT: All right. Well, I will give [UPB's counsel] an opportunity to cross-examine her. * * * And then we can discuss the issue of the exhibit.

After UPB's cross-examination of the witness, the parties each presented a brief closing argument, and the trial court indicated that it would mark the matter "heard and submitted." The trial court then requested that each party file proposed findings of fact and conclusions of law. There was no further discussion of Mosezit's request to admit the exhibit in the record. "'A reviewing court cannot consider an exhibit unless the record demonstrates that the exhibit was formally admitted into evidence in the lower court.'" *Cuyahoga Falls v. Doskocil*, 9th Dist. Summit No. 26553, 2013-Ohio-2074, ¶ 12, quoting *Patio Enclosures, Inc. v. Four Seasons Marketing Corp.*, 9th Dist. Summit No. 22458, 2005-Ohio-4933, ¶ 66.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY EILEEN KILBANE, J., CONCUR